**Ira Sylvester GODFROY et al., etc.**

v.

**The UNITED STATES.**

**The MIAMI TRIBE OF OKLAHOMA et al., etc.**

v.

**The UNITED STATES.**

**Appeal No. 71.**

United States Court of Claims.

Oct. 13, 1972.

Rehearing Denied Feb. 22, 1973.

Robert C. Bell, attorney of record for David L. Kiley and Estate of Walter H. Maloney, Sr. (Appeal No. 6–71); Walter H. Maloney, Jr., and Kiley, Osborn, Kiley & Harker, Marion, Ind., of counsel.

Louis L. Rochmes, Washington, D. C., attorney of record (Appeal No. 8–71); Edwin Rothschild and Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., of counsel.

W. Braxton Miller, Washington, D. C., with whom was Asst. Atty. Gen., Kent Frizzell, for the United States.

Glen A. Wilkinson, Washington, D. C., filed a brief for Wilkinson, Cragun & Barker, Washington, D. C., amicus curiae.

Marvin J. Sonosky, Washington, D. C., filed a brief on his own behalf as amicus curiae.

Before COWEN, Chief Judge, LARA-MORE and DURFEE, Senior Judges, and DAVIS, SKELTON and NICHOLS, Judges.

On Appeal From the Indian Claims Commission

(Motion for Rehearing)

LARAMORE, Senior Judge.

The appeals involved herein are from a decision by the Indian Claims Commission allowing and apportioning attorneys' fees based on recoveries by the Miami Tribe of Indians. Pursuant to an opinion of April 11, 1972, 198 Ct.Cl. 1, 458 F.2d 93, this court reversed in part the decision of the Indian Claims Commission and remanded the cases to the Commission with instructions to reapportion the subject fees in accordance with that opinion. The appeals come before the court at this time on a Motion for Rehearing, filed May 10, 1972, by the attorney of record for the Miami Tribe of Oklahoma group, appellants in No. 8–71, and a response to that Motion by the attorney of record for the Miami Tribe of Indiana group, appellants in No. 6–71. Briefs amicus curiae in support of the Motion were filed by the firm and individual indicated above.

After consideration thereof, and for the reasons which follow, the Motion for Rehearing is granted, the decision of April 11, 1972 is vacated and withdrawn, and the decision by the Indian Claims Commission involved in these appeals is affirmed.

The opinion of the court affirming the Commission is as follows:

The problem presented arises because there are two identifiable tribes that are qualified to retain attorneys pursuant to the Indian Claims Commission Act, 25 U.S.C. § 70n (1970), but only one award made in two parts to the Miami Indian Tribe.[1] One of the descendant tribes, the Oklahoma Miamis, by their authorized attorneys, filed claims with the Indian Claims Commission which were designated as Docket Nos. 255 and 256. These claims included the same lands in Northern and Central Indiana that were covered by claims filed on behalf of the other faction of the original Miami Tribe, the Miami Indian Tribe of Indiana. The cases filed on behalf of the Indiana Tribe were designated as Docket Nos. 124–C, 124–D, 124–E and 124–F. Thus having six separate cases with a question common to all, the Indian Claims Commission consolidated the cases into two separate dockets. The first, with a combined Docket No. of 124–C/255 arose from the cession of a reservation under a treaty made in 1828 and was finally resolved through settlement of the claim for the sum of $66,966 (20 Ind.Cl.Comm. 97 (1968) ). The second case, with a consolidated Docket No. of 124–D, E, F/256 arose from the cession of 13 reservations by the Miami Tribe under three different treaties, one made in 1834, effective in 1837, one in 1838 and the other in 1840. These cases were also finally determined by settlement following a trial on the merits for the final amount of $1,373,-000 (20 Ind.Cl.Comm. 113 (1968)).

In the prosecution of these claims the Miami Tribe of Oklahoma was represented, pursuant to Contract No. 42017, which was approved by the Bureau of Indian Affairs May 10, 1948, by the law firm of Sonnenschein, Levinson, Carlin, Nath & Rosenthal, but individually by Mr. Louis L. Rochmes. The Miami Tribe of Indiana was originally represented by Walter H. Maloney, Sr. by virtue of Contract No. 950 which was approved by the Bureau of Indian Affairs on June 7, 1951. Thereafter, the contract and representation was partially assigned to Walter H. Maloney, Jr. (with Walter H. Maloney, Sr. retaining "of counsel" rights) and the law firm of Kiley, Osborn, Kiley & Harker who in turn associated with Robert C. Bell, Jr.

Following the successful prosecution of the Indian claims, both sets of attorneys filed with the Indian Claims Commission for their fees. Both sets of lawyers were allowed the maximum 10 percent fee but no agreement could be reached between the lawyers as to how they should be divided. Therefore, application was made to the Indian Claims Commission for a decision as to a proper division of the fee awards. The Commission found, by their opinion of February 18, 1971, that both sets of attorneys had valid agreements with their respective tribes for the maximum 10 percent fee and that both were diligent in representing and protecting the interest of their respective clients. (24 Ind.Cl. Comm. 450 (1971) ). They, therefore, allowed the fee of $6,696.60 for Docket Nos. 255 and 124–C and a fee of $137,300 for Docket Nos. 256 and 124–D, E, and F. It was further decided that upon consideration of services rendered and the relative contribution made by each that the fees be apportioned on a basis of 70 percent of each fee to the law firm of Sonnenschein, Levinson, Carlin, Nath & Rosenthal, and 30 percent of each fee to the attorneys for the Miami Tribe of Indiana. From that decision the Oklahoma Tribe attorneys filed Appeal No. 6–71 wherein they seek

---

1. The Indian Claims Commission decided in Miami Tribe v. United States, 17 Ind. Cl.Comm. 427 (1966) that neither faction of the Miami Tribe was the full successor to the original tribe but both are entitled to represent it.

an increase of the allocation with reference to Docket No. 124–D, E, and F/256. The attorneys for Miami Tribe of Indiana appeal in No. 8–71 seeking adjustment of the allocation in respect to both the above Docket No. and 124–C/255. After consideration of the appeal of the Indiana group and the cross-appeal of the Oklahoma attorneys we affirm the decision of the Indian Claims Commission.

While the type of case we have here is somewhat unusual, it is not the first time this court has had occasion to consider the problem. In Chickasaw Nation v. United States, 121 Ct.Cl. 41 (1951) a similar case was considered by this court except that in *Chickasaw* the appellant-intervenor was not an attorney of record. Because of that fact, this court dismissed the intervenor's petition stating that:

> Any dispute or claim by attorneys other than attorneys of record for services rendered whether by private contract or other obligation must be settled between the parties themselves or in another forum. [*Chickasaw, supra* at 45]

*See also,* Beddo v. United States, 28 Ct. Cl. 69 (1893); Creek Nation v. United States, 79 Ct.Cl. 778 (1934).

More recently, however, we entertained the case of Red Lake and Pembina Bands v. Turtle Mountain Band of Chippewa Indians, 173 Ct.Cl. 928, 355 F.2d 936 (1965). In that case the factual pattern was even more like the present situation in that the attorneys who could not settle on a division of fees were both attorneys of record. Therefore, the holding in *Chickasaw, supra,* was not in point and this court thus had to consider the jurisdictional aspects in greater detail to decide if the Indian Claims Commission was authorized to make a final determination on the matter of entitlement. Preliminarily, it was held that the Commission had jurisdiction to determine whether the attorney applying for a fee is entitled to the compensation for which he had applied. This question was held to be clearly within the jurisdiction of the Commission since the determination of entitlement depends solely upon whether the attorney of record has performed "services" for his client pursuant to the terms of 25 U.S.C. § 70n, and there is no better place than the Indian Claims Commission to decide that question. Therefore, once it was determined that the entitlement issue was within the jurisdiction of the Commission, it was also decided that this court has jurisdiction to review since section 20(b) of the Indian Claims Commission Act, 25 U.S.C. § 70s(b) (1970) gives this court jurisdiction to review any "final determination" of the Commission.

Following the resolution of the jurisdiction question as to entitlement, this court was subsequently called upon to decide if the Commission had jurisdiction to go beyond entitlement to rule upon apportionment. In Sisseton and Wahpeton Bands or Tribes v. United States, 191 Ct.Cl. 459, 470, 423 F.2d 1386 (1970) this court stated, in distinguishing the *Sisseton* case from the *Beddo* case, *supra,* that:

> * * * Under the Indian Claims Commission Act, the Commission must determine that such a fee-claiming attorney has rendered services "in prosecuting the claim in question" before he becomes entitled to compensation. Red Lake and Pembina Bands v. [Turtle Mountain Band of Chippewa Indians,] United States, *supra,* 173 Ct.Cl. 928, 933–934, 355 F.2d 936, 938–939. If he is so found, payment is directed from the funds in the hands of the Government. The Act thus provides, in effect, that such a request for fees is an action against the United States of which the Commission (and this court, on appeal) has jurisdiction.

Moreover, and speaking directly to the apportionment question, it was decided that:

> * * * [no] other tribunal [Commission] can or is likely to know as much about the relative participation of the claimants. There are no pri-

vate dealings or arrangements * * * to consider or adjudicate. The issue wholly depends on an evaluation of the contribution of the two independent sets of lawyers to the final result * * *. The task is one for which the Commission is uniquely fitted [footnote omitted; *ibid*, at 470–471, 423 F.2d at 1392].

Proceeding then with the substantive issues, we must return to the *Red Lake* case, *supra*. In *Red Lake*, the rule for entitlement, as developed, was that in order to be awarded a fee *services* must have been performed. More specifically, Judge Davis, writing for the court, stated:

> * * * The fees are specifically characterized as being "for *all services rendered in prosecuting the claim in question*", and the Commission is told to set an amount which is "adequate compensation *for services rendered* and results obtained" (emphasis added). Congress thus made the performance of services a *sine qua non* for compensation. [*Red Lake and Pembina Bands, supra,* at 933, 355 F.2d at 938].

Further developing the standards for entitlement, the *Red Lake* decision emphasized that the *services* rendered must be in prosecution of "the claim in question"—the claim in question being defined as " * * * the demand, founded on the Treaty of October 2, 1863, *supra,* * * *." (*Red Lake and Pembina Bands, supra,* at 937, 355 F.2d at 941). Moreover, Judge Davis explained that:

> Where the "claim in question" is joint or combined, it is not a service in prosecution of that *common concern* to advance a particular advantage of only one of the interested groups at the expense of the others. The services for which the attorneys are to be compensated out of the * * * recovery consist of efforts to create and preserve that fund, not of unsuccessful attempts to capture it for one entity. [Footnote omitted; emphasis supplied; *Red Lake and Pembina*

*Bands, supra,* at 938, 355 F.2d at 941] Thus, in *Red Lake,* Mr. Mills, the attorney seeking a portion of the attorney fees, was denied recovery since there was substantial evidence to show that his efforts were made not for the common concern, *i. e.,* the prosecution of the claim by the larger tribe to recover for lands ceded under a specific treaty, but instead his efforts were shown to be made for the benefit of only a portion of the larger tribe to the exclusion of the others. With that principle there can be no argument; moreover, it is clearly one that can be applied to more than just Mr. Mills in the *Red Lake* setting. Indeed, we are of the opinion that the standard heretofore enunciated is one that should be applied to other similar situations and this case is no exception.

Like *Red Lake,* the case at bar also involves claims arising from treaty cessions by Indian groups which, between the terms of the treaties and the passage of the Indian Claims Commission Act, *supra,* had been divided into separate groups which filed separate petitions by separate counsel. The only difference that exists in this case is that here the attorneys are both entitled to a fee while in *Red Lake* one of the parties was not. Nevertheless, that difference does not vitiate the applicability of *Red Lake* since we are of the opinion that the question of entitlement is so closely related to the issue of apportionment that the same principles should be used to determine both.

In this case, attorneys for the Miami Tribe of Indiana appeal to us to increase the Commission's allocation of fees from 30 percent to 71 percent. This figure is based upon, first, the finding by the Commission that said attorneys are entitled to their fee and, second, the assertion that since the attorneys represent 71 percent of the present day descendants of the original Miami Tribe of Indians their part of the total fee should be allocated accordingly. Therefore, argues the Indiana attorneys, they should have 71 percent of the combined fee. Said Indiana counsel further argues

that since distribution of the final award will be made on a *per capita* basis, 71 percent to the Indiana Tribe and only 29 percent to the Oklahoma contingent, the allocation of fees decided upon by the Commission should have been on a similar basis.

Throughout the Indiana attorneys' briefs, as well as in oral argument, great emphasis is placed upon the pure number of Indians each counsel represents as the indicator of how much each attorney should receive as their share of the lump-sum ten percent fee. On the other hand, the Oklahoma attorneys emphasize that the question should not be decided on the basis of the ultimate *per capita* distribution but instead should be decided on the basis of each attorney's *relative contribution*. Like the Indiana attorneys, however, Oklahoma counsel also argue that the Commission erred in Docket No. 124–D, E, F/256. They erred, allege the Oklahoma group, not in their method of determination, but in the ultimate figures arrived upon. Oklahoma counsel feel that in judging the performance of the opposing groups, on a relative contribution standard, the Commission should have determined that the Indiana attorneys contributed nothing to the common concern and should therefore, be entitled to no part of the fee allocated to Docket No. 124–D, E and F/256. They evidently concede that in Docket No. 124–C/255 Indiana counsel made at least a 30 percent contribution in achieving the ultimate settlement of $66,966 and, therefore, do not appeal that portion of the Commission's determination.

■ In resolution of the opposing positions of each group of lawyers we cannot fully agree with either side. As has been pointed out, the standard of *Red Lake* appears to us to be logically sound and legally applicable. By its very basic approach of connecting the determination of fees to the performance of services it necessarily excludes the proposition that fees are to be determined on a par with *per capita* distribution. That

general proposition together with the further refinement of making those services specifically relate to the common concern persuade us that a *per capita* allocation is improper. However, because we cannot ignore the many hours and years of effort put forth by Mr. Maloney, *et al.*, we cannot agree with the Oklahoma counsel that Mr. Maloney and his co-counsel are entitled to nothing.

■ The Commission has found that all exhibits on value, which was the issue at trial, were prepared and introduced into evidence by the Oklahoma attorneys. They also found that the exhibits introduced by the Indiana attorneys only concerned the relationship of their clients to the Miami Tribe as it existed on the treaty dates, thus indicating that the services performed were not for the common concern but only for the Indiana Tribe. The Commission also found that the Oklahoma attorneys presented the expert testimony on value and handled the cross-examination of defendant's witnesses while the Indiana attorneys' main concern was with matters relating to distribution of the prospective awards. Indeed, the Indiana attorneys' continued and persistent efforts to show the complete separation and autonomy of the two tribes further indicate to us that the Commission was correct in its holding and that the proper approach was taken by the Commission. The Indiana group fail to recognize that the services required to entitle them to a fee are those which advocate the impropriety of the original treaty cessions as it related to the tribe in existence at the treaty dates. At those times, 1828, 1837, 1838 and 1840, there was one Miami Tribe and it is on behalf of that tribe that recovery was sought and attained. Once that award is made the common cause has been achieved and the statutory fee has been earned. The post award services must ·of course be directed toward the interests of each attorney's particular client or clients. However, compensation for that type of service is not a matter to be determined by

the Commission or this court on appeal. The Commission was concerned only with the type and extent of services performed by each group of attorneys in terms of the relative contribution made for the benefit of the common concern. The Commission heard the evidence and viewed each group of attorneys in action and the Commission was, therefore, in the best position to decide the contribution of each group of lawyers. Obviously, there could be no better judge of that question than the Commission itself. On this appeal of that final determination, we are convinced that the proper standards were used and that the decision of the Commission was neither arbitrary nor capricious and that it was based on substantial evidence. We, therefore, must dismiss both appeals and confirm the holding of the Indian Claims Commission.

DAVIS, Judge (concurring):

I join in the court's opinion and, in view of Judge Skelton's dissenting views, also incorporate here the pertinent portions of my dissent on the original decision in this case, 198 Ct.Cl. 1, ——, 458 F.2d 93, 104.

SKELTON, Judge (dissenting):

On April 11, 1972, this court decided this case in a written opinion, 198 Ct.Cl. 1, 458 F.2d 93, in which the attorney fees were equally divided between the competing attorneys. In my opinion, that decision was not only fair, just, and equitable, but was also correct as a matter of law. There has been no change in the facts or the law since that decision was rendered by this court. The only events that have occurred since our original opinion was rendered are the following:

(1) The death of our former distinguished colleague, Judge Linton M. Collins, who voted with the majority in our opinion.

(2) An attorney for the Oklahoma Tribe has filed a Motion for Rehearing and an attorney for the Indiana Tribe has filed a response to such motion.

(3) Two prominent Washington law firms who have extensive litigation for many Indian tribes have filed *amicus curiae* briefs seeking to overturn our prior opinion in favor of a disproportionate award of attorney fees to the attorneys for the Oklahoma Miamis.

(4) One of our judges who voted with the majority in our prior opinion has changed his position and now votes with the present majority to overturn our former opinion.

Neither the motion nor the *amicus curiae* briefs have presented anything new. We have the same facts and the same law we had when we decided the case before. Nothing has been raised under our Rule 68 or otherwise that justifies the court in turning full circle in order to reverse our prior opinion. Such action is very rare and almost unprecedented where there has been no clerical error nor change in the facts or the law. In my opinion, the action is wholly unwarranted and unjustified.

Our prior opinion, with slight changes, is made a part of my dissent as follows:

The appeals now before the court are two separate appeals from a decision of the Indian Claims Commission following their decision allowing and apportioning attorney's fees based on recoveries for the Miami Tribe of Indians. The problem arises because there are two identifiable tribes that are qualified to retain attorneys pursuant to the Indian Claims Commission Act, 25 U.S.C. § 70n (1970), but only one joint award was to the two tribes as successors to the original Miami Indian Tribe.[1] One of the descendant tribes, the Oklahoma Miamis, by their authorized attorneys, filed claims with the Indian Claims Commission

---

1. The Indian Claims Commission decided in Miami Tribe v. United States, 17 Ind. Cl.Comm. 427 (1966), that neither faction of the Miami Tribe was the full successor to the original tribe but both are entitled to represent it.

which were designated as Docket Nos. 255 and 256. These claims included the same lands in Northern and Central Indiana that were covered by claims filed on behalf of the other faction of the original Miami Tribe, the Miami Indian Tribe of Indiana. The cases filed on behalf of the Indiana Tribe were designated as Docket Nos. 124–C, 124–D, 124–E and 124–F. Thus, having six separate cases with a question common to all, the Indian Claims Commission consolidated the cases into two separate dockets. The first, with a combined Docket No. of 124–C/255 arose from the cession of a reservation under a treaty made in 1828 and was finally resolved through settlement of the claim for the sum of $66,966 (20 Ind.Cl.Comm. 97 (1968) ). The second case, with a consolidated Docket No. of 124–D, E, F/256 arose from the cession of 13 reservations by the Miami Tribe under three different treaties, one made in 1834, effective in 1837, one in 1838 and the other in 1840. These cases were also finally determined by settlement following a trial on the merits for the final amount of $1,373,-000 (20 Ind.Cl.Comm. 113 (1968)).

In the prosecution of these claims the Miami Tribe of Oklahoma was represented, pursuant to Contract No. 42017, which was approved by the Bureau of Indian Affairs May 10, 1948, by the law firm of Sonnenschein, Levinson, Carlin, Nath & Rosenthal, but individually by Mr. Louis L. Rochmes. The Miami Tribe of Indiana was originally represented by Walter H. Maloney, Sr. by virtue of Contract No. 950 which was approved by the Bureau of Indian Affairs on June 7, 1951. Thereafter, the contract and representation was partially assigned to Walter H. Maloney, Jr. (with Walter H. Maloney, Sr. retaining "of counsel" rights) and the law firm of Kiley, Osborn, Kiley & Harker who in turn associated with Robert C. Bell, Jr.

Following the successful prosecution of the Indian claims, both sets of attorneys filed with the Indian Claims Commission for approval of their fees. Both sets of lawyers were allowed the maximum 10 percent fee but no agreement could be reached between the lawyers as to how they should be divided. Therefore, application was made to the Indian Claims Commission for a decision as to a proper division of the fee awards. The Commission found, by their opinion of February 18, 1971, that both sets of attorneys had valid agreements with their respective tribes for the maximum 10 percent fee and that both were diligent in representing and protecting the interest of their respective clients. (24 Ind.Cl.Comm. 450 (1971). They, therefore, allowed the fee of $6,696.60 for Docket Nos. 255 and 124–C and a fee of $137,300 for Docket Nos. 256 and 124–D, E, and F. It was further decided that upon consideration of services rendered and the relative contribution made by each that the fees be apportioned on a basis of 70 percent of each fee to the Sonnenschein, Levinson, Carlin, Nath & Rosenthal firm and 30 percent of each fee to the attorneys for the Miami Tribe of Indiana. From that decision the Oklahoma Tribe attorneys filed appeal No. 6–71 wherein they seek an increase of the allocation with reference to Docket Nos. 124–D, E, and F/256. The attorneys for Miami Tribe of Indiana appeal in No. 8–71 seeking adjustment of the allocation in respect to both the above Docket No. and 124–C/255.

The decision of the Indian Claims Commission made a disproportionate division of attorney fees between the two groups of attorneys in this case, and should be reversed. The decision is contrary to the contracts and the Indian Claims Commission Act, is at variance with the findings of the Commission, does violence to the rights of the attorneys representing the Miami Indians of Indiana by awarding fees rightfully belonging to them to the Oklahoma attorneys who are not legally entitled to them, and violates the rights of the Indiana Indians by imposing upon them the services of the Oklahoma attorneys whom they did not employ and with whom they have no privity of contract, and awards fees to such attorneys that belong to the Indiana Indians themselves

if not paid to their attorneys. Furthermore, the decision is arbitrary and is not supported by substantial evidence, is unjust and inequitable, all as shown below.

## I

### The Contracts

I begin with the contracts which initiated the litigation. I will refer to the attorneys representing the Miami Indians of Indiana as the Indiana attorneys, and to such Indians as the Indiana Indians. In like manner, I will refer to the attorneys representing the Miami Indians of Oklahoma as the Oklahoma attorneys and to such Indians as the Oklahoma Indians.

The contract of the Oklahoma attorneys was made January 28, 1947, and it provides, among other things, as follows:

THIS AGREEMENT, made and entered into * * *, by and between Harley T. Palmer, Chief * * * [and others] *acting for and on behalf of the Miami Tribe of Oklahoma,* party of the first part, and Sonnenschein. * * * [and others], attorneys at law, parties of the second part:

WITNESSETH, That the party of the first part *on behalf of said Miami Tribe of Oklahoma* under the authority vested therein by resolution of a council of said Indians adopted on the 28th day of January, 1947, * * * contracts with, retains and employs the parties of the second part as attorneys * * *.

* * * * * *

It is agreed that the compensation of the parties of the second part for the services to be rendered under the terms of this contract is to be *wholly* contingent upon a recovery *for the tribe.* The parties of the second part shall receive as such compensation ten per centum (10%) of any and all sums recovered or procured, through efforts, in whole or in part, *for said Indians,* * * *. [Emphasis supplied.]

* * * * * *

The contract was signed by the Chief, Second Chief, and a Councilman, as "Tribal Delegates," and by a member of said law firm.

The Honorable William M. Thomas, Judge of the Seventh Judicial District Court of Oklahoma, put a certificate on the contract, certifying that:

* * * Harley T. Palmer, * * * [and others] * * * entered into, signed and executed * * *, *for and on behalf of the Miami Tribe of Oklahoma,* the contract, * * *; that, as then stated to me, the *Miami Tribe of Oklahoma* are the parties on the one side, and Sonnenschein * * * [and others], attorneys at law, on the other. [Emphasis supplied.]

Also attached to the contract is a certificate of Honorable William J. Campbell, Judge of the U.S. District Court of the Northern District of Illinois, in which he certified that Edward P. Morse, a member of the law firm of Sonnenschein (et al.) entered into, signed, and executed the contract for and on behalf of said firm and:

* * * [T]hat, as then stated to me, *the Miami Tribe of Oklahoma* is the party interested on the one side, and the said attorneys at law, Sonnenschein [et al.], the parties interested on the other. [Emphasis supplied.]

Attached to the contract is a copy of a resolution adopted by the Miami Tribe of Oklahoma at a meeting of that tribe, authorizing the execution of the contract with said attorneys, and appointing Chief Harley T. Palmer and others as delegates to execute the contract *for and on behalf of the Miami Tribe of Oklahoma.*

This contract was approved by William Zimmerman, Jr., Acting Commissioner of Indian Affairs of the Department of Interior. It is the sole authority of the Oklahoma attorneys to act in these cases.

I turn now to the contract of the Indiana attorneys. This document was executed on October 31, 1949, by and between the Miami Indians of Indiana,

acting by and through its authorized delegates Ira Sylvester Godfroy (et al.) as party of the first part, and Walter H. Maloney (et al.) attorneys at law, parties of the second part. The contract provided, among other things:

> That the party of the first part, * * * under authority vested by resolution adopted by a majority vote of said Indians, assembled in special session on July 16, 1949, a copy of which is hereto attached * * * hereby contracts with, retains and employs the parties of the second part as attorneys in the matters hereinafter mentioned and set out, * * *.
>
> * * * * * *
>
> * * * The parties of the second part shall receive as such compensation ten per centum (10%) of any and all sums recovered or procured through efforts, in whole or in part, *for said party of the first part,* * * *. [Emphasis supplied.]
>
> * * * * * *

Attached to the contract is a certificate of Henry S. Bailey, Judge of the Circuit Court of Miami County, Indiana, in which he certified that Ira Sylvester Godfroy (et al.):

> * * * [T]he duly delegated representatives *on behalf of the Miami Indians of Indiana* * * * entered into, signed and executed * * * *for and on behalf of the Miami Indians of Indiana,* the contract * * * and, as stated to me, said delegates, acting for and on behalf of themselves *and the Miami Indians of Indiana,* is the party interested on the one side, and Walter H. Maloney * * * [et al.] are the parties interested on the other side. [Emphasis supplied.]

Also attached to the contract is a certificate of James R. Kirkland, Judge of the District Court of the District of Columbia in which he certified that Walter H. Maloney, in his presence, executed the contract, and:

> * * * [A]s stated to me, *The Miami Indians of Indiana,* acting by and through its duly authorized agents, Ira Sylvester Godfroy * * * [et al.] is

the party interested on the one side and Walter H. Maloney is the party interested on the other. [Emphasis supplied.]

Attached to the contract was the following resolution in pertinent part:

> RESOLVE that *the Miami Indians of the State of Indiana* assembled in special session this 16 day of July, 1949, select by a majority vote of all members Ira Sylvester Godfroy * * * [et al.] to sign contracts *for and on behalf of themselves and all others, legal members of the Miami Tribe of the State of Indiana,* for the purpose of prosecuting claims for all members of said Miami Tribe. * * * [Emphasis supplied.]

This contract was approved by D. S. Myer, Commissioner of Indian Affairs, with minor changes, one of which was to change the attorney fee to "not to exceed" 10 percent of any and all sums recovered or procured for said party of the first part (the Miami Indians of Indiana).

It is clear from these contracts that the Oklahoma attorneys were authorized to represent *only* the Oklahoma Indians and had no authority whatever to represent the Indiana Indians. In like manner, the Indiana attorneys were authorized to represent *only* the Indiana Indians and had no authority whatever to represent the Oklahoma Indians.

In due time, the two groups of attorneys filed separate suits for their respective clients pursuant to their contracts. The cases were consolidated for trial by the I.C.C. on December 19, 1958.

II

*The Indian Claims Commission Act Limits the Authority of the I.C.C. To Fix Attorney Fees*

The Indian Claims Commission Act (25 U.S.C. § 70n (1970)) provides as follows:

> § 70n. Attorneys of claimants; selection, practice and fees; Attorney General to represent United States; compromise of claims.

Each such tribe, band, or other identifiable group of Indians may retain to represent its interests in the presentation of claims before the Commission an attorney or attorneys at law, *of its own selection,* whose practice before the Commission shall be regulated by its adopted procedure. The fees of such attorney or attorneys for all services rendered in prosecuting the claim in question, whether before the Commission or otherwise, shall, *unless* the amount of such fees is stipulated in the approved contract between the attorney or attorneys and the claimant, *be fixed by the Commission* at such amount as the Commission, in accordance with standards obtaining for prosecuting similar contingent claims in courts of law, *finds to be adequate compensation for services rendered and results obtained,* considering the contingent nature of the case, plus all reasonable expenses incurred in the prosecution of the claim; *but the amount so fixed by the Commission,* exclusive of reimbursements for actual expenses, *shall not exceed 10 per centum of the amount recovered* in any case. * * * [Emphasis supplied.]

It will be observed that the Act does not authorize the I.C.C. to fix attorney fees if the fees are stipulated in an approved contract. It is only where the fees are not so stipulated that the I.C.C. can determine them. This is because the Act provides that *unless* the fees are stipulated in an approved contract, the Commission shall fix the fees. The converse of this provision deprives the Commission of this authority if the fees are stipulated in the contract.

Applying this statute to the case before us, it appears that the Commission had no authority to fix the fees of the Oklahoma attorneys because their approved contract stipulated that their fee would be 10 percent of the amount recovered for the Oklahoma Indians. According to the terms of the Act, this fee could not be increased nor decreased by the Commission. Of course, the attorneys must render some services in order to get their fee. *See* Red Lake and Pembina Bands v. Turtle Mountain Band of Chippewa Indians, 173 Ct.Cl. 928, 355 F.2d 936 (1965). Therefore, when the Commission increased the attorney fee of the Oklahoma attorneys above 10 percent of the amount they recovered for the Oklahoma Indians by awarding such attorneys an additional fee based on the recovery of the Indiana Indians, it exceeded its authority and acted contrary to the Act.

Furthermore, even if it could be assumed arguendo that as a general proposition the Commission had the authority to increase the attorney fees of the Oklahoma attorneys, it acted directly contrary to another provision of the Act by increasing such fees above 10 percent of the amount recovered by them for their clients. The Act provides:

* * * [T]he amount [of attorney fees] so fixed by the Commission * * * shall not exceed 10 per centum of the amount recovered in any case. * * * ·

The words in the Act "shall not exceed 10 per centum" clearly means "shall not exceed 10 per centum of the amount recovered *by the attorneys for their clients* in any case."

The situation with respect to the fee of the Indiana attorneys is somewhat different. It will be remembered that their contract provided that their fee would be "not more than" 10 percent of the amount recovered for the Indiana Indians. Under these circumstances, the Commission had the authority to fix their fees at an amount less than 10 percent of said recovery. That was done here. The amount of the reduction, however, belonged to the Indiana Indians. In the case of Sisseton & Wahpeton Bands v. United States, 191 Ct.Cl. 459, 423 F.2d 1386 (1970), this court said:

* * * The United States holds the sums awarded in trust for the Indians, and the [attorney] fees are to

come from those funds. \* \* \*
[*Id.* at 470, 423 F.2d at 1391.]

Consequently, the Commission had no authority to take any part of these trust funds from the Indiana Indians and award them as increased fees to the Oklahoma attorneys who had no contract with the Indiana Indians and had no authority to represent them. The Indiana Indians would have just cause for complaint if the decision of the Commission should be carried out and trust funds of such Indians are paid to the Oklahoma attorneys as fees.

## III

*The Indiana Indians had the right under the Indian Claims Commission Act to Select their own Attorneys*

Section 70n of the Indian Claims Commission Act, quoted above, provides:

Each such tribe, band, or other identifiable group of Indians may retain to represent its interests in the presentation of claims before the Commission an attorney or attorneys at law, *of its own selection,* \* \* \*. [Emphasis supplied.]

In this case, the Indiana Indians selected and retained the Indiana attorneys to represent them. They did not select nor retain the Oklahoma attorneys to represent them. Yet, the decision of the Commission forces the services of the Oklahoma attorneys upon them and pays such attorneys' fees with funds that belong either to the Indiana attorneys or to the Indiana Indians. This has deprived these Indians of their right to select their own attorneys which is guaranteed to them by the Act.

## IV

*The Disproportionate Award of Attorney Fees by the Commission conflicts with its findings*

This is not a case like Red Lake and Pembina Bands v. Turtle Mountain Band of Chippewa Indians, *supra,* where an attorney was denied attorney fees because he had not rendered any services

at all. On the contrary, in the present case the facts show that the Indiana attorneys rendered valuable and diligent services for over twenty years, including conferences with the Indians, research, preparing and filing petitions and other pleadings, introduction of evidence, participation in hearings and trials, filing briefs, presenting oral arguments, and representing their clients in an able manner for more than two decades. For these reasons, the *Red Lake* case is not applicable.

The above facts are shown by the findings of the Commission as follows:

3. \* \* \* Upon examination of the record of proceedings before this Commission in the claims under Docket Nos. 124–C, D, E, and F, we find that the attorneys for the Indiana Miamis have rendered valuable services in the successful prosecution of the claims. The attorneys participated in the trial, briefing and argument before the Commission in the claims involved in Docket Nos. 124–D, E, and F. \* \* \* The attorneys for the Indiana Miamis participated in the required settlement procedures, [of Docket Nos. 255 and 124–C] as set forth in detail in the Commission's findings of fact on the compromise settlements in both cases.

\* \* \* \* \* \*

6. The Commission finds that the attorneys for the Miami Indians of Indiana are entitled to a fee of ten percent as compensation for services rendered in the prosecution of the claims under Docket Nos. 124–C, D, E and F.

\* \* \* \* \* \*

8. \* \* \*

Counsel for both Miami groups were diligent in representing and protecting the interests of their respective clients. \* \* \* [24 Ind.Cl.Comm. 450, 461–463 (1970).]

In The Award and Apportionment of Attorneys' Fees, the Commission stated:

\* \* \* The attorneys for the Indiana Miamis have rendered valuable

services in the successful prosecution of their clients' claims. The attorneys participated in the trial, briefing and argument before the Commission in the claims involved in Docket Nos. 124–D, E, and F. * * * The Commission concludes that the attorneys for the Miami Indians of Indiana are entitled to a fee of ten percent for their services rendered in the prosecution of the claims under Docket Nos. 124–C, D, E, and F.

\* \* \* \* \* \*

Counsel for both Miami groups were diligent in representing and protecting the interests of their respective clients. * * * [24 Ind.Cl. Comm. 450, 452–453, 455 (1970)].

These findings and conclusions of the Commission show without question that the Indiana attorneys rendered valuable and conscientious services for the Indiana Indians, and by reason thereof, are entitled to their fee of 10 percent of the amount recovered for their clients. In fact, the Commission so found. Notwithstanding these findings and conclusions, the Commission arbitrarily denied them the 10 percent fee and allowed them only 30 percent of the total 10 percent fee in the sum of $143,996.60 and allowed the Oklahoma attorneys a fee of 70 percent of this amount.

The reasoning of the Commission was that the Oklahoma attorneys took the lead in the case and introduced all the exhibits on land value, which was the issue in the case. The Indiana attorneys say that to facilitate an orderly trial they allowed the Oklahoma attorneys to proceed first, not realizing or even suspecting that by doing so the Oklahoma attorneys would later claim the entire attorney fee. Furthermore, the Indiana attorneys say that no witness on value was put on the stand by the Oklahoma attorneys and support this by the following statement of one of such attorneys during the trial.

We have deliberately not put on a so-called expert to guess at what the value of the Indian lands were 150 years ago or about 110 years ago it is, * * * because we know that this Commission is as well qualified to determine from the evidence, historical, geographical and economic evidence, before it as any real estate man might be, to set a value. [Tr. 127, June 29, 1959.]

To justify its decision, the Commission said:

\* \* \* The Sonnenschein firm [Oklahoma attorneys] presented the plaintiffs' expert testimony on value * * *. [24 Ind.Cl.Comm. 450, 463–464.]

This statement does not appear to be correct. The Commissioners who made the findings of fact in the case found:

33. In the course of the trial, *petitioners* presented one witness, Mr. John Long, who testified as an expert in the fields of economic history and geography. * * * The gist of Mr. Long's testimony was that the area of the subject tracts was very favorable for agriculture, that the land was fertile and attractive to settlers, and that the lands were in demand at a good price. *He gave no opinion as to the fair market value of the subject lands, nor did he submit a written report.* [Emphasis supplied.] [14 Ind. Cl.Comm. 375, 429, 430.] [Finding 33.]

This finding is significant for two reasons. In the first place it shows that the Commissioners considered that Mr. Long was a witness of both the Indiana and Oklahoma Tribes and not of the Oklahoma Tribe alone, because they stated that the *petitioners* presented one witness. In the second place, this finding shows that the present Commission was mistaken in saying the Oklahoma attorneys presented "the plaintiff's testimony on value." Actually, the record shows that only the defendant presented expert witnesses on value. The Commission found:

Defendant presented the testimony of several expert witnesses. [14 Ind.Cl. Comm. 375, 430.]

These experts were Dr. Theodore Carlson, Mr. Thomas M. Bushnell, and Dr. Homer Hoyt. Dr. Hoyt was an expert appraiser. (See 14 Ind.Cl.Comm. 375, 431.) The Commission determined value from these defense witnesses, along with historical, geographic, economic, climatic, and other public information. The Oklahoma attorneys could hardly be given credit for this evidence.

The Indiana attorneys point out that the 77 exhibits on value introduced by the Oklahoma attorneys were duplicates of exhibits introduced in evidence in a prior case (Docket 67/124) in which both groups of attorneys participated. The cost of these exhibits was paid jointly by the Indiana and Oklahoma Indians. Both had a property right in them. Also, they were public records once they were put in evidence in the prior case. These facts were admitted by the Oklahoma attorneys in their proposed finding number 5 of their application for fees when they said:

\* \* \* [T]here were received in evidence on behalf of the petitioners 77 exhibits, all of which had previously been introduced by the parties in Docket 67.

This was also admitted by the Oklahoma attorneys on page 6 of their brief.

Obviously the Indiana attorneys could have introduced copies of the same documents and would no doubt have done so had they known the Oklahoma attorneys were going to claim the entire attorney fee because of these exhibits. They point out they did introduce 69 exhibits (not 19 as stated by the Commission).

In our opinion, this evidence falls far short of being substantial evidence that will support the decision of the Commission in apportioning the attorney fees.

Almost everyone who has ever practiced law has sooner or later found himself in a case where he has been associated with other attorneys in a common cause. Someone has to take the lead in the case. Only one lawyer can talk or proceed with the evidence at one time. In such instances, the attorneys agree as to what evidence will be introduced and which attorney will take the lead and proceed. But it would be an unheard of occurrence for the lawyer who takes the lead and puts on the evidence to claim the entire attorney fee. This is contrary to the universal custom and practice of lawyers everywhere. It is incredible that the Oklahoma attorneys would claim the entire attorney fee, or any amount above the 10 percent of the recovery for their clients as specified in their contract.

The entire membership of the Commission changed after the trial in 1959. The members of the present Commission who apportioned and fixed the attorney fees did not hear the evidence nor participate in the trial on the merits.[2] Consequently, they are in no better position to decide what the lawyers did nor the fee they are entitled to than we are. All they have to go by is the cold record itself and that is available to us also. In my opinion, the record considered as a whole does not support the decision of the Commission.

The Commission has found and concluded that the Indiana attorneys rendered valuable services in the successful prosecution of the claims of their clients, and that they were diligent in representing and protecting the interests of their clients, and that they are entitled to a fee of 10 percent for their services rendered. Yet, in the face of these findings, the Commission denied them

2. The members of the Indian Claims Commission who made the Findings of Fact in this consolidated case were Arthur V. Watkins, William Holt, and T. Harold Scott. See their Findings of Fact and Interlocutory Order in 14 Ind.Cl.Comm. 375, 483.
The membership of the Commission that made the award and apportionment of attorneys' fees, findings of fact and the order awarding such fees on Feb. 18, 1971, was completely different and was composed of John T. Vance, Jerome K. Kuykendall, Richard W. Yarborough, Margaret H. Pierce, and Brantley Blue. See 24 Ind.Cl.Comm. 450, 467.

the 10 percent attorney fee. This decision conflicts with the findings of the Commission and is arbitrary.

Furthermore, it should be noted that the consolidation of the cases by the Commission was solely for the purpose of the trial and was for the convenience of the Commission as well as the parties. The consolidation did not consolidate nor merge the Indiana and Oklahoma Tribes. They remained separate and distinct tribes or bands of identifiable Indians. They could not be merged into one tribe by the Commission. As a matter of fact, the Indiana Indians could not be members of the Oklahoma Tribe because the latter was organized as an agricultural co-operative under an Oklahoma Indian Welfare Act (49 Stat. 1967, 25 U.S.C. § 501 (1964)), which was restricted to the Miami Indians residing in Oklahoma. The Commission so held in 14 Ind.Cl.Comm. 375, 440, when it said:

> As applied to the case in issue, *the Miami Indians of Indiana,* petitioner in Docket Nos. 124–D, 124–E, and 124–F, *are not members of the Miami Tribe of Oklahoma nor can they become members, according to the restrictions placed on membership by the constitution and by-laws of the Miami Tribe of Oklahoma.* [Emphasis supplied.]

Also, the consolidation of the cases for trial by the Commission did not merge the contracts of the attorneys into one contract. The Commission had no power nor authority to effect such a merger. Consequently, the two groups of attorneys continued to represent their respective clients in accordance with their contracts and are entitled to be paid fees as provided in the contracts for the valuable and diligent services the Commission found they rendered.

## V

*The Attorney Fees should be divided equally between the Indiana Attorneys and the Oklahoma Attorneys*

The Commission has allowed an attorney fee in the total sum of $143,996.60.

The Indiana attorneys say that they should receive an attorney fee of 70.1 percent of this total fee, which 70.1 percent amounts to $102,768.53. They support this claim by showing that the roll of the Miami Indians ordered by Public Law 89–659 of October 14, 1966 (80 Stat. 909), was completed and approved by the Secretary of Interior on June 25, 1969, and showed 4,296 enrollees, 1,230 being Oklahoma Miamis and 3,066 being Indiana Miamis. The Indiana attorneys argue that the total attorney fee should be divided on this per capita basis and that they should be paid 10 percent of 3,066/4,296ths of the total award, and the Oklahoma attorneys paid 10 percent of 1,230/4,296ths of the total award. The difficulty with this argument is that the award was not made, and could not be made on a per capita basis. Awards can only be made by the Commission to Indian Tribes. It does not have jurisdiction over claims of individual Indians. The award in this case was made to the Indiana Miamis and the Oklahoma Miamis as tribes and not to the individual Indians in each tribe. Of course, Congress could pay the award to the individual Indians on a per capita basis. The indications are that it will do so. This is shown by the contents of H.R. 5199, introduced in the House of Representatives, 92d Congress, 1st Session, on March 1, 1971, which provides that the award in this case shall be paid to the enrollees on a per capita basis. This proposed law has not been finally passed by the Congress but is still pending. It gives some moral, if not legal, support to the contentions of the Indiana attorneys. It should be mentioned that at oral argument of this case, the Indiana attorneys stated that if their fee could not be fixed on a per capita basis, then the total attorney fee should be divided equally between them and the Oklahoma attorneys.

The Oklahoma attorneys, on the other hand, contend they should get the entire attorney fee of $143,966.60, saying they took the lead in the case, put on most of the evidence, and did most of the work. They cite the *Red Lake* case, *supra.* I

have already pointed out why the *Red Lake* case is inapposite here as an authority for denying the Indiana attorneys a fee. The Commission agreed this was correct. So, the claim of the Oklahoma attorneys for all the fee must also be denied.

Finally, I come to the ultimate question of how the attorney fee should be divided. This question seems to solve itself when we look at the contracts of the attorneys, and the findings and award of the Commission. Each group of attorneys was entitled to 10 percent of the amount they recovered for their clients, as provided by their contracts and as supplemented by the findings of the Commission. The Commission found that neither the Oklahoma Miamis nor the Indiana Miamis was the full successor to the original Miami Tribe, although both are entitled to represent it. (14 Ind.Cl.Comm. 375, 444 (1964); 17 Ind.Cl.Comm. 427, 432 (1966); 24 Ind. Cl.Comm. 451 & n. 1 (1971).) In the final judgments in both of our cases, it was provided:

> * * * [A]nd the petitioners *jointly* as representatives of the Miami Tribe * * * shall .have and recover from the defendant the sum of $ * * *. [Emphasis supplied.] [20 Ind.Cl.Comm. 97, 112A, 129A.]

In "The Award and Apportionment of Attorneys' Fees" in these cases, the Commission stated:

> * * * There was, however, no division of the awards in these cases. The judgments were entered in favor of the Miami Tribe of Oklahoma and the Miami Indians of Indiana *jointly* as representatives of the Miami Tribe. [Emphasis supplied.] [24 Ind.Cl. Comm. 450, 454.]

Thus, it is clear that both tribes had equal standing in the cases and that the awards and judgments were made to them and rendered in their favor *jointly*. What do the words *joint* and *jointly* mean? I find that Webster's Third New International Dictionary, 1967, defines *joint* as follows:

> Common to two or more; held in common (as property); united in right or interest.

The word *jointly* is defined as:

> In a joint manner, as together, unitedly; joint tenancy.

Black's Law Dictionary 973 (4th ed. 1951), defines *jointly* thus:

> Unitedly, combined or joined together in unity of interest * * *. In a joint manner; * * *. * * * [H]eld or shared in common.

These definitions of the words "joint" and "jointly," together with the findings and award of the Commission, make it abundantly clear that the Indiana Miami Tribe and the Oklahoma Miami Tribe had equal shares in the awards. Their interests in the awards were much like those of joint tenants. Where joint tenants own property, real or personal, they are presumed to own it equally in the absence of evidence to the contrary. *See* 48 C.J.S. Joint Tenancy § 6 (1947), where it is stated:

> * * * The shares or interests of joint tenants *are presumed to be equal,* * * *.
>
> *Bank accounts.* Each tenant acquires a joint interest in the bank account at the time of the creation of the joint tenancy, *and is presumed to own an equal share in the account;* but this presumption is rebuttable. [Footnotes omitted.] [Emphasis supplied.]

In this case, there is no evidence or showing that these two tribes did not have an equal ownership in the awards. The evidence is conclusively the other way. The Commission stated:

> * * * There was, however, *no division of the awards in these cases.* The judgments were entered in favor of the Miami Tribe of Oklahoma and the Miami Indians of Indiana *jointly* as representatives of the Miami Tribe. * * * [Emphasis supplied.] [24 Ind.Cl.Comm. 450, 454.]

The judgments themselves stated:

&ast; &ast; &ast; [A]nd the petitioners *jointly* &ast; &ast; &ast; shall have and recover &ast; &ast; &ast;. [Emphasis supplied.] [20 Ind.Cl.Comm. 97, 112A, 129A.]

It is clear from these findings, awards, and judgments of the Commission that the amounts recovered were shared and owned *equally* by both the Indiana Miamis and the Oklahoma Miamis, each tribe owning one-half. Therefore, it is inescapable that the Indiana attorneys recovered one-half of the total awards for their Indiana clients and the Oklahoma attorneys recovered one-half of the total awards for their Oklahoma clients. Accordingly, each group of attorneys is entitled to one-half of the total attorney fee awarded by the Commission.

Such a division of the attorney fees is not only in accord with the contracts of the attorneys, the services they rendered, the findings of the Commission, and the Indian Claims Commission Act, but also with the awards and final judgments of the Commission. Furthermore, it is right and just. As a precedent, this division of fees will, in my opinion, inure to the benefit of the Commission and the legal profession as well in the trial of future cases where more than one tribe of Indians are involved and are represented by different lawyers. It will tend to eliminate rivalry, bickering, overreaching, and competition among lawyers as to who will take the lead and put on the evidence in future cases. It will also expedite such trials by preventing duplication of effort by the attorneys, as well as corresponding duplication of evidence and endless arguments as to which attorney did the most work. These cases are troublesome enough without having difficulties of this nature.

I would deny the appeal of the Oklahoma attorneys, and grant the appeal of the Indiana attorneys in part, and reverse the decision of the Indian Claims Commission in part, and remand the cases to the Commission with instructions to enter judgment for one-half of the attorney fees for the Indiana attorneys and one-half of the attorney fees for the Oklahoma attorneys.

COWEN, Chief Judge, joins in the foregoing dissenting opinion.