The SISSETON AND WAHPETON
BANDS OR TRIBES et al.

v.

The UNITED STATES.
Appeal No. 4–69.

United States Court of Claims.
April 17, 1970.

Marvin J. Sonosky, Washington, D. C., attorney of record, for appellants. Emerson Hopp, Minneapolis, Minn., and Louis L. Rochmes, Washington, D. C., of counsel.

John D. Sullivan, Washington, D. C., with whom was Asst. Atty. Gen. Shiro Kashiwa for appellee the United States.

Jess Larson, Washington, D. C., attorney of record, for appellees, heirs of Kelly Brown and Wesley E. Disney. Urban A. Lester, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON APPEAL FROM THE INDIAN CLAIMS COMMISSION

DAVIS, Judge.

This controversy arises out of an award of attorneys' fees by the Indian Claims Commission upon its judgment of $5,097,575 in favor of certain Indian

claimants. Our appellate jurisdiction rests on Sections 15 and 20 of the Indian Claims Commission Act, 25 U.S.C. §§ 70n, 70s (1964). Cherokee Nation v. United States, 355 F.2d 945, 947–949, 174 Ct.Cl. 131, 135–139 (1966); Red Lake and Pembina Bands v. United States, 355 F.2d 936, 939–940, 173 Ct.Cl. 928, 934–935 (1965).

In 1948, Kelly Brown and Wesley E. Disney entered into a contingent fee contract with the Sisseton and Wahpeton Tribes of South Dakota to prosecute several claims on behalf of these Indians, against the United States, before the Indian Claims Commission (and other bodies). The termination clause of the contract (which had been approved by the Commissioner of Indian Affairs) stated:

> This contract may be terminated by the Secretary of Interior for cause deemed by him to be reasonable and satisfactory upon sixty (60) days notice to the parties in interest; and if the contract shall be so terminated, the party of the second part [Disney and Brown] shall be credited with such interest should any sum or sums be recovered by a judgment of a court or tribunal as the court or tribunal may determine to be equitable in the fee found to be due upon the final determination of the said suit and the controverted matters therein included
> * * *.

In July 1951, Disney and Brown filed a petition with the Indian Claims Commission, Docket No. 142, together with the law firm of Traynor and Traynor, representing the North Dakota Sisseton and Wahpeton Tribes. A month later, Marvin J. Sonosky and Emerson Hopp, counsel for three Minnesota Sioux tribes which included a branch of the Sisseton and Wahpeton group involved in the Disney-Brown-Traynor litigation, filed five petitions with the Commission, alleging, *inter alia*, a claim identical to that filed in Docket No. 142.

The Government moved to dismiss the petition in Docket No. 142 (filed by Disney-Brown-Traynor), citing a Congressional statute it deemed dispositive. No response was made by the claimants' lawyers. Instead, in March 1952, Disney wrote the Tribal Secretary, requesting that he be permitted to withdraw from the case since he felt unable to refute the Government's motion, and advising the Indians to seek other counsel. He added that he would turn over all the fruits of his labor to such new lawyers as the Tribes might employ.

Disney made essentially the same statement in a letter a week later to the Commissioner of Indian Affairs, seeking permission to withdraw. The same day he filed a motion for leave to withdraw with the Indian Claims Commission, informing the tribunal that his co-counsel, Brown, also desired to end his representation. The Commissioner of Indian Affairs advised Disney, in effect, that he would probably be unable to grant the attorney's request if the Indians wished to pursue the claim and were unable to obtain other counsel. Apparently uncertain as to Brown's position, the Commissioner also asked for clarification; if both attorneys wanted to quit, they should get the Commissioner's approval, and then perhaps assign the contract or make a supplemental contract of termination with the Indians. No assignment or supplemental contract was made.

In August 1952, the South Dakota Sisseton and Wahpeton Tribes offered a contract to Sonosky and Hopp, who refused it, pending confirmation of Disney's and Brown's withdrawal.[1] In response to inquires by Sonosky and Hopp, Brown asked (in September 1952) permission from the Tribe and the Commissioner to withdraw. In December 1952, the Commissioner simultaneously terminated the Disney-Brown contract and approved that offered to Sonosky and Hopp, stating that the requisite 60 days notice had obviously been given the former.

---

1. Sonosky and Hopp were aware, at least in general, of Disney's desire and attempt to withdraw.

The Sonosky-Hopp agreement covered the claim in Docket No. 142, and called for a contingent fee of 10%.

Successful in resisting the Government's motion to dismiss, Sonosky and Hopp, in conjunction with Traynor and Traynor, obtained a judgment in 1967 on all claims, including $5,097,575 allocable to Docket No. 142. Requesting a full 10% fee, Sonosky and Hopp were challenged by the heirs of Disney and Brown, both now deceased, who claimed a share of that fee, for services rendered before the withdrawal, according to the principles of *quantum meruit*. The Indian Claims Commission (a) agreed that a 10% fee ($509,757.50) should be awarded, (b) granted $445,188.22 outright to Sonosky and Hopp,[2] (c) determined that Disney and Brown had performed valuable services, (d) found that there had been a consent withdrawal and no waiver by Disney or Brown of their fee interests, and (e) held that the Disney-Brown heirs were entitled to participate with Sonosky and Hopp in the remaining $64,569.28.[3] The Commission refused, however, to divide this sum, holding that it lacked jurisdiction to apportion fees among disputing attorneys appearing before it.

Sonosky and Hopp have appealed, asking for the full 10% fee, and asserting that the Commission erred in finding a consent withdrawal, as well as in refusing to apportion the fee if that should be necessary. The heirs of Disney and Brown support the Commission's finding that there was a consent withdrawal, but likewise object to the ruling that the Commission lacked power to allocate the fee. The United States, which holds the funds in trust for the Tribes through the Department of the Interior, maintains via the Department of Justice that the Commission was correct in refusing to divide, but takes no position on the other questions.

The first issue is whether Sonosky and Hopp can demand a full 10% of the judgment, on the strength of their contract with the Indians, regardless of claims based on the services of the other attorneys. The answer turns on Section 15 of the Indian Claims Commission Act. 25 U.S.C. § 70n, which declares in relevant part:

The fees of such attorney or attorneys for all services rendered in prosecuting the claim in question, whether before the Commission or otherwise, shall, unless the amount of such fees is stipulated in the approved contract between the attorney or attorneys and the claimant, be fixed by the Commission at such amount as the Commission, in accordance with standards obtaining for prosecuting similar contingent claims in courts of law, finds to be adequate compensation for services rendered and results obtained, considering the contingent nature of the case, plus all reasonable expenses incurred in the prosecution of the claim; but the amount so fixed by the Commission, exclusive of reimbursements for actual expenses, shall not exceed 10 per centum of the amount recovered in any case.

Appellants Sonosky and Hopp say that their fee of a full 10% has been stipulated in an approved contract, and therefore that the Commission has no power to fix any other sum for them.

This argument fails upon a close reading of Section 15 and a broad view of the purpose of that provision. The "unless" clause—"unless the amount of such fees is stipulated in the approved contract between the attorney or attorneys and the claimant"—cannot mean that Sonosky and Hopp, by making an agreement for a full 10%, may thereby exclude Disney and Brown, even though the latter would otherwise be entitled to a fee, from all compensation. But that would neces-

---

2. The Traynor firm, as well as Louis L. Rochmes who also had an interest, asked that this sum be paid entirely to Sonosky and Hopp.

3. All the attorneys involved have agreed that the Disney-Brown interest is limited to sharing in this $64,569.28.

sarily be the result if appellants were right. For the amount of the Disney-Brown fee is not set by approved contract and must therefore be fixed by the Commission.[4] That body, however, is strictly limited by the statute to a maximum of 10% "of the amount recovered in any case" for "the fees of such attorney or attorneys for all legal services rendered in prosecuting the claim in question." If appellants can rightly insist on the entire 10% because they had the foresight to put that figure in their contract, nothing would be left for Disney and Brown no matter how meritorious their claim. Congress could not have intended such an inequity, or to allow one attorney to bar another's pay in that fashion.

■ Nor did Congress intend the Commission to allow, through its action, a fee greater than 10% to be collected out of a judgment. The 10% maximum on compensation fixed by the Commission applies to "all services rendered in prosecuting the claim in question", not merely to the fee of the particular counsel whose claim is being adjudicated. The Commission could not, for instance, give Disney and Brown 10% (or any lesser sum) after Sonosky and Hopp had received 10%. The Indian claimants were not to be subject to such piece-meal shaving of their judgment through Commission fee-awards. This is the view that has been uniformly accepted, practically without discussion. So far as we are aware, fees fixed by the Commission, regardless of the number of lawyers or contracts, have not exceeded 10% of the final award. *See* Cherokee Nation v. United States, 355 F.2d 945, 955, 174 Ct.Cl. 131, 149 (1966). The common assumption has been that the statutory 10% is the upper limit. *See, e. g.,* Cherokee Nation v.

United States, *supra*; Red Lake and Pembina Bands v. United States, 355 F.2d 936, 173 Ct.Cl. 928 (1965); Chickasaw Nation v. United States, 121 Ct.Cl. 41 (1951).

■ The second issue concerns the Commission's finding that Disney and Brown had received consent to their withdrawal. Appellants do not contend that the Tribes' former lawyers rendered no service, or that a withdrawal-with-consent would be inadequate or unjustified.[5] Sisseton and Wahpeton Bands v. United States, 20 Ind.Cl.Comm. 398, 399 (1969). Rather, they challenge the Commission's finding that there was consent by the Indians to the termination of the contract with Disney and Brown.

The incontestable facts are that Disney informed the Tribal Secretary, in March 1952, and the Commissioner of Indian Affairs, in April 1952, that he wished to withdraw from the case. No protest was made by the Indians to Disney's action, no request or demand that he continue. Instead, they sought and obtained other counsel—Hopp and Sonosky—willing to press their claim. The Tribal Claims Committee recommended that the Secretary of the Interior be requested to accept Disney's withdrawal and to terminate Brown's contract. At the prodding of Hopp and Sonosky, Brown informed the Tribes that he was withdrawing and formally notified the Interior Department of that position. On December 31, 1952, in accordance with the apparent wishes of all parties, the Commissioner of Indian Affairs terminated the Disney-Brown contract.

These facts constitute substantial evidence upon which the Commission could conclude that the arrangement between Disney and Brown, on the one side, and

---

4. In addition to Section 15, the termination clause of the 1948 Disney-Brown contract, *supra*, so provides.

5. The parties have cited many "lawyer's withdrawal" decisions which are irrelevant to our case because they deal with "justifiable cause" for withdrawal in the absence of the client's consent. *See* Fletcher v. Krise, 73 App.D.C. 266, 120

F.2d 809, cert. denied, 314 U.S. 608, 62 S.Ct. 88, 86 L.Ed. 489 (1941); Woodbury v. Andrew Jergens Co., 61 F.2d 736 (C.A.2, 1932), cert. denied sub. nom. Berenson v. Woodbury, 289 U.S. 740, 53 S.Ct. 659, 77 L.Ed. 1487 (1933); In re Woodworth, 15 F.Supp. 291 (S.D.N.Y.), aff'd 85 F.2d 50 (C.A.2, 1936); Borup v. National Airlines Inc., 159 F.Supp. 808 (S.D.N.Y.1958).

the Tribes, on the other, was abrogated by and with the consent of the latter. The requests of Disney, Brown's letters, the actions of the Indians, the activities of Sonosky and Hopp, and the actions and statements of the Commissioner of Indian Affairs, combine to reveal a mutual agreement to terminate the contract. The Commission also found that neither Brown nor Disney ever disclaimed any fee interest; and this failure or refusal to renounce a share in the final fee-award supports the conclusion that there was a consent withdrawal. In sum, we cannot say that there was a lack of proper evidence to substantiate the crucial finding of consent.

■ Having determined that Disney and Brown are entitled to participate in the attorneys' compensation carved from the judgment obtained by the Sisseton and Wahpeton Bands, we pass to the final question of the Commission's jurisdiction to apportion. The Government's argument, that neither the Court of Claims nor the Indian Claims Commission has this power, rests primarily upon its interpretation and application of two decisions handed down by this court.

In Chickasaw Nation v. United States, 121 Ct.Cl. 41 (1951), the heirs of William Fuller, an attorney who had entered into a contract with the Chickasaws long before the passage of the Indian Claims Commission Act of 1946, asked the Commission to determine Fuller's share of a fee resulting from the successful prosecution of a suit, on behalf of the Chickasaws, by other lawyers holding a separate and later contract with these Indians. The heirs claimed that the attorneys of record utilized the legal efforts of their ancestor, and therefore that he was entitled to an interest in the fee, to be apportioned by the Commission. Dismissing the claim of the heirs, we stated (121 Ct.Cl. at 44–45):

> Neither the Indian Claims Commission nor this court has jurisdiction to apportion fees among disputing attorneys or to make allowance for fees for anyone except attorneys of record.

> \*    \*    \*    \*    \*    \*

> Any dispute or claim by attorneys other than attorneys of record for services rendered whether by private contract or other obligation must be settled between the parties themselves or in another forum.

Despite the breadth of this language, the facts of that case reveal the statement's innate limitations. The Fuller contract was signed well prior to the creation of the Indian Claims Commission and Fuller never appeared before that agency. The later contract was held by the attorneys of record in the subsequent litigation who did appear before the Commission. There was no sound reason, nor did any seem contemplated by Congress in Section 15, for permitting the Commission to apportion attorneys' fees on the basis of a document (Fuller's contract) it had not seen, approved, or had anything to do with, but which had had its operation before the tribunal's creation—as well as on the basis of services which were rendered before the Commission was even born. Fuller was never an attorney of record before the Commission, and never participated in any of its proceedings.

In Red Lake and Pembina Bands v. United States, 355 F.2d 936, 173 Ct.Cl. 928 (1965), we reiterated, in passing, the general observation that "Neither the Commission nor this court has jurisdiction to apportion an award among the attorneys shown to be entitled to one." 355 F.2d at 938–939, 173 Ct.Cl. at 933. But in that case we never reached the question to which that statement, whether it be read broadly or narrowly, addresses itself. Red Lake, like Chickasaw and this case, involved multiple contracts culminating in multiple claims of interest in a fee from a single case. But the only matter decided in Red Lake was whether all the attorneys had rendered services in the suit, so as to qualify them for a fee, an issue which we held clearly within the jurisdiction of the Commission and this court. The presumed rule of non-apportionment was simply assumed, in gross terms, without examination or refinement. Since we determined that the claimant-attorneys had performed no

compensable service, our disposition necessarily reserved an actual decision on the allocation of fees among attorneys who served in the same litigation under separate contracts to a time when that precise issue would properly arise—as it now has.

There being no governing precedent under the Indian Claims Commission Act, we must, for the first time, fix upon the correct rule. The clue is given, we think, by the court's treatment, in an earlier day, of a comparable problem. Beddo v. United States, 28 Ct.Cl. 69 (1893), involved controversies among attorneys over the fees to be allowed by the court under the Depredation Act of 1891, 26 Stat. 851. Referring to the "ramifications to which innumerable controversies among attorneys may extend when they enter into contracts for the division of fees and make assignments in relation to the same" (28 Ct.Cl. at 75), the decision held that "only such attorneys as have actually appeared for claimants can be recognized as entitled to allowance of fees. Associate counsel and assignees, and persons otherwise employed, must look for their pay to those with whom they have contracts" (28 Ct.Cl. at 76).[6] The court added however: "Where several atttorneys have at different times, appeared for claimants, their fees will be apportioned on the entry of judgment in proportion to the value of their services to the claimants" (ibid.).

▮ This same distinction seems equally valid and appropriate in the context of Indian Claims Commission litigation. When lawyers who are associated together—for instance, under the same contract—dispute over their relative participation, the United States, this court, and the Commission have no concern. Cf. Robertson v. Gordon, 226 U.S. 311, 316–317, 33 S.Ct. 105, 57 L.Ed. 236 (1912). The matter is a private one for resolution by the contending parties or by those tribunals established to decide wholly private controversies.[7] Moreover, neither the Commission nor this court is likely to have any special knowledge or expertise in deciding these private contractual quarrels which involve the relationships and activities of the associated attorneys among themselves. Cf. Bowser, Inc. v. United States, 420 F.2d 1057, 190 Ct.Cl. —— (Jan. 1970).

On the other hand, in a case like this "[w]here several attorneys have, at different times, appeared for claimants" (Beddo v. United States, supra, 28 Ct.Cl. at 76)—generally under separate contracts—the dispute becomes more than a private contractual squabble. Both sets of claiming attorneys are or were attorneys of record in the proceeding. The United States holds the sums awarded in trust for the Indians, and the fees are to come from those funds. Under the Indian Claims Commission Act, the Commission must determine that such a fee-claiming attorney has rendered services "in prosecuting the claim in question" before he becomes entitled to compensation. Red Lake and Pembina Bands v. United States, supra, 355 F.2d 936, 938–939, 173 Ct.Cl. 928, 933–934. If he is so found, payment is directed from the funds in the hands of the Government.

6. In the same connection, the court said that it could "make allowance of fees only to claimants' attorneys who have actually appeared in the prosecution of the claims, and can take no notice of their assignees and creditors, even where money has been borrowed to aid in the prosecution of the claims, nor of those of other persons employed in the cases" (ibid.). See, to the same effect, Creek Nation v. United States, 79 Ct.Cl. 778, 779 (1934).

7. In Beddo the court said (28 Ct.Cl. at 76): "There is no end to controversies in which attorneys may become involved under contracts and assignments. Jurisdiction of issues thereby raised are beyond the scope and object of the act establishing this court. The original act was 'to establish a court for the investigation of claims against the Government of the United States.' (Act of February 24, 1855, chap. 122, 10 Stat.L., 612.) To go beyond that act and to undertake to adjudicate upon the conflicting claims, legal and equitable, of attorneys and others among themselves, would be to invade the jurisdiction of other courts established to try issues between parties where the United States are not concerned, a jurisdiction never intended to be conferred on the Court of Claims."

The Act thus provides, in effect, that such a request for fees is an action against the United States of which the Commission (and this court, on appeal) has jurisdiction.

In this instance the competing attorney-claimants each acted and appeared, at different times, in this litigation under approved contracts. One contract has been successfully concluded (with respect to this claim) and the other was properly terminated by the consent of the Tribes and the Commissioner of Indian Affairs. The Indian Claims Commission has decided that each set of lawyers rendered compensable service in the prosecution of the claim. The total fee has been fixed by the Commission. No other tribunal can or is likely to know as much about the relative participation of the claimants. There are no private dealings or arrangements between Disney-Brown and Sonosky-Hopp to consider or adjudicate. The issue wholly depends on an evaluation of the contribution of the two independent sets of lawyers to the final result—a judgment which need not delve into the private interrelationships of associated attorneys. The task is one for which the Commission is uniquely fitted.[8] We now see no adequate reason to say that the Congress which expressly authorized the Commission to fix fees has withheld this ancillary power.

The decision of the Indian Claims Commission that the heirs of Disney and Brown are entitled to participate in the remaining $64,569.28 of the awarded fee is affirmed. The refusal of the Commission to divide the fee is reversed and the case remanded for a division of the fee between the heirs of Disney and Brown, on the one side, and Messrs. Sonosky and Hopp, on the other.

Affirmed in part; reversed in part.

8. It has some significance that both groups of claiming lawyers seek an apportionment by the Commission, not by an outside tribunal.