SALT RIVER PIMA–MARICOPA
INDIAN COMMUNITY, et al.

v.

The UNITED STATES.

ESTATE OF James E. CURRY,
Deceased, Intervenor,

v.

Z. Simpson COX, Respondent
in Intervention.

No. 291.

United States Claims Court.

Aug. 21, 1984.

Philip J. Shea, Phoenix, Ariz., for plaintiffs.  Marks, Shea & Wilks, Phoenix, Ariz., of counsel.

M. Edward Bander, Washington, D.C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D.C., for defendant.

Landon Gerald Dowdey, Washington, D.C., for intervenor.

Z. Simpson Cox and Alfred S. Cox, Phoenix, Ariz., for respondent in intervention.  Alan J. Cox and Cox & Cox, Phoenix, Ariz., of counsel.

## MEMORANDUM OF DECISION

HARKINS, Judge.

This is the termination phase of an ancient Indian Claim proceeding in which the last remaining business is concerned with the allocation of fees for legal services between competing claimants.  The case began in the Indian Claims Commission (Commission) on August 10, 1951, by petition on behalf of plaintiffs, the Salt River Pima-Maricopa Indian Community (SRIC), under the Act of August 13, 1946.  (60 Stat. 1049, 25 U.S.C. §§ 70 et seq. (1976).  Pursuant to the Act of October 8, 1976 (90 Stat. 1990, 25 U.S.C. § 70v (1976)), the case was transferred to the United States Court of Claims by Commission order dated December 15, 1976.

By September 30, 1978, most of SRIC's claims had been resolved, by stipulation or legislation, apart from this case.  On June 16, 1982, the parties filed a stipulation for entry of final judgment in settlement of the sole remaining claim, and on July 2, 1982, the Court of Claims entered judgment in favor of SRIC in the amount of $13 million.

On July 2, 1982, Philip J. Shea, the last attorney of record for plaintiffs, filed a motion for determination of attorneys fees on behalf of his firm and on behalf of a preceding attorney of record, Z. Simpson Cox.  On September 7, 1982, Landon Gerald Dowdey moved to intervene on behalf of the estate of James E. Curry, deceased.  James E. Curry had been the first chief attorney and attorney of record for the SRIC.

The Court of Claims, by order on September 24, 1982 (231 Ct.Cl. 1037), allowed the motion to intervene by the estate of James E. Curry.  In the order, the Court of Claims determined that, for the legal services that had been provided to the SRIC, a fee of 10% of the judgment was fair and reasonable.  The court approved the award of 7.5% of the judgment ($975,000) as attorneys fees to the final attorney of record, and it determined that 2.5% of the judgment was fair and reasonable for the remaining legal services.  The court, however, declined to allocate the 2.5% portion of the judgment ($325,000) between the other claimants, and remanded the case to the Trial Division of the Court of Claims for further proceedings to identify the attorneys entitled to that portion of the fee.  On October 1, 1982, the case was transferred to the United States Claims Court pursuant to section 403(d) of the Federal Courts Improvement Act of 1982.  28 U.S.C. § 171, note (1982).

In this court, the intervenor (Curry Estate) and the respondent in intervention (Cox) were unable to negotiate a settlement that would resolve their respective claims.  In further proceedings, counsel on March 23, 1983, and August 15, 1983, filed voluminous documentary materials to support their factual contentions.  The intervenor notified, pursuant to RUSCC 14(a) and (c), all known potential claimants to a share of the fee.  On February 22, 1983, Richard B. Wilks and Philip J. Shea advised that they have been fully compensated for all servic-

es performed in this case and made no claim for any part of the undistributed attorneys fees. The other potential claimants who had been notified made no appearance; it is determined that the only interests now eligible to submit a claim for attorney fees in docket No. 291 are the Curry Estate and Cox.

Neither party challenges the authenticity of the documentary exhibits submitted by their opponent. Counsel have agreed that proceedings to elicit testimony are unnecessary and that final determination of the allocation of the remaining 2.5% of the judgment for attorney services may be made on the basis of briefs and supporting documentation.

### FACTS

The attorneys fee to be allocated in this proceeding is for legal services that were provided to the SRIC before July 18, 1977. On that date, the SRIC employed Royal D. Marks, Philip J. Shea, and Richard B. Wilks to represent it in its trust accounting claim against the United States in docket No. 291 (Attorney Contract, BIA symbol H50C1420–0353). Legal services performed after July 18, 1977, in docket No. 291 were performed solely by Marks, Shea and Wilks and 7.5% of the judgment has been dispersed to them in compensation for such services.

In order to assess the quality and extent of legal services for the SRIC that were performed prior to July 18, 1977, it is appropriate to examine the course of the SRIC's claims prior to that date. There is no dispute that fair and reasonable compensation for the pre-July 18, 1977, services in toto is 2.5% of the judgment. The Court of Claims so found in its September 24, 1982, order, and the SRIC so agreed in a resolution of its council on July 13, 1977 (Res. No. SR 1103–77), and in contracts with its attorneys on July 18, 1977 (BIA symbols I–1–Ind–42193 and H50C1420–0353).

All of the pre-July 18, 1977, legal services in the presentation of SRIC's claims against the United States in docket No. 291 were performed under an attorney contract that bore the BIA symbol No. I–1–Ind–42193 (No. 42193). As is typical of Indian Claims proceedings, docket No. 291 continued for decades. During the course of the claim proceedings in docket No. 291, contract No. 42193 underwent a succession of expirations and reinstatements, with changes in attorneys and in their responsibilities to the SRIC.

The original petition, filed August 10, 1951, set forth two causes of action. Cause of action No. 1—the Phoenix claim—concerned the grant of a right-of-way in 1916 to the City of Phoenix for a pipeline across the reservation. The petition noted that the SRIC was pursuing a claim against the City of Phoenix for trespass, that one partial defense alleged that the United States had granted to the City some of the necessary consents, permissions and rights-of-way, and that the SRIC sought recovery from the United States to the extent that it failed to effect an adequate recovery from the City of Phoenix. The petition stated, if the SRIC would obtain a full recovery from, or adequate settlement with, the City of Phoenix, it would dismiss cause of action No. 1, "pending which time it will, if the City approves, hold this cause of action in abeyance and not prosecute it." In cause of action No. 2—the accounting claim—the SRIC demanded a fiduciary accounting by the United States for the management of SRIC's real and personal property from 1848 to August 13, 1946.

On the Phoenix claim, the Commission allowed 19 motions by defendant for time extensions to answer, which extended the time for such answer until July 6, 1956. On August 16, 1956, the United States requested an additional 120-day extension to answer the Phoenix claim, and on August 30, 1956, moved for summary judgment on that claim. SRIC filed a response and objections on March 29, 1957, and, on May 13, 1957, the Commission overruled the motion for summary judgment, with defendant allowed to May 31 to move for a more definite statement. Defendant timely filed its motion for a more definite statement, and, on March 24, 1958, the Commission by or-

der extended to October 1, 1958, the time for SRIC to answer defendant's motion.

No further action was taken in docket No. 291, with respect to the Phoenix claim, until September 23, 1968. During the interval, Royal D. Marks, the general counsel for the SRIC, in direct negotiations with the City of Phoenix settled the Phoenix claim outside docket No. 291. On September 23, the SRIC moved to dismiss the first cause of action in docket No. 291 on the ground that a satisfactory settlement had been effected. In its October 3, 1968, order of dismissal, the Commission noted that the SRIC council by resolution on April 4, 1968, had directed its attorney to dismiss and that the BIA on July 1, had approved the SRIC's action.

With respect to the accounting claim, in cause of action No. 2, the Commission's routine procedures were followed. Under the Commission's practice, the United States did not respond to the petition as to the accounting claim until after an accounting report was made. The report at first was made by the General Accounting Office (GAO), and later in this program this function was transferred to the General Services Administration (GSA). When the accounting report was filed, the United States filed such motion as appropriate under the circumstances. Thereafter, the procedure required the claimant to file within 90 days specified exceptions, with reasons in support, to any item or items which it contested. Defendant then would answer to claimant's exceptions. *Sioux Tribe of Indians of the Cheyenne River Reservation v. United States*, 12 Ind.Cl. Comm. 541, 547 (1963).

On April 19, 1971, the GSA accounting report was filed. It applied to four Commission dockets: Nos. 235, 236–B, 236–N and 291.

In docket No. 291, on May 12, 1972, counsel for SRIC filed 16 exceptions with supporting statements to contest the GSA report, one of which, (Exception No. 4) stated that the United States had failed to make a proper trust accounting for SRIC's properties or property rights, other than

cash deposited in the Treasury. After defendant's response, filed October 13, 1972, the case was inactive until October 7, 1974, at which time the Government moved for partial summary judgment on Exception Nos. 1, 2, 3, 4, and 15. On failure of a response by SRIC, the Commission on November 22, 1974, granted defendant's motion with respect to Exception Nos. 1, 2, 3, and 15, and denied it with respect to Exception Nos. 5 and 16. Exception Nos. 8 and 9 were ordered to be made more specific; SRIC was held to be entitled to an accounting under Exception No. 4, and defendant was given until January 20, 1975, to file a supplemental accounting report on that exception. Defendant was directed to produce additional information relative to Exception Nos. 6 and 7.

In subsequent proceedings, the Commission on December 17, 1974, and on January 29, 1975, permitted counsel for SRIC to preserve the right to file exceptions to the property accounting that had been ordered on November 22, 1974. On August 13, 1975, in further proceedings on Exception Nos. 8 and 9, the Commission ordered defendant to determine whether it held any tribal funds in Individual Indian Monies (IMM), or other accounts on which interest had not been credited or reported, and if so to render an accounting. On July 9, 1976, defendant filed the GSA accounting report prepared pursuant to the August 13, 1975, order. Thereafter, until docket No. 291 was transferred to the United States Court of Claims on December 15, 1976, there was no significant activity before the Commission on SRIC's claims.

After the SRIC appointed a new counsel and attorney of record on July 18, 1977, it sought legislation that would satisfy the property accounting claims that were pending in docket No. 291, and during that period further action in court was not pursued. The legislative effort prospered and an Act to Modify a Portion of the Southern Boundary of the Salt River Pima-Maricopa Reservation, and for Other Purposes, (Pub.L. No. 95–399, 92 Stat. 851) was enacted on September 30, 1978. That Act satis-

fied most of SRIC's claims for a trust accounting of its properties and left to be adjudicated only the claim for an accounting for deprivation of water rights.

On January 8, 1979, SRIC filed an amended petition that abandoned all property accounting claims other than the claim for an accounting of deprivation of water rights. This claim was settled by stipulation of the parties, and the Court of Claims on July 2, 1982, ordered judgment for $13 million.

In summary, the recoveries SRIC has obtained on the claims that were filed on August 10, 1951, in the Commission have been gained either through actions outside of proceedings in docket No. 291, or are attributable to attorney services provided after July 18, 1977. Legal services provided by SRIC's attorneys during the period prior to July 18, 1977, essentially are limited to (1) the initial filing of the petition, and (2) preservation of a right to a trust accounting for the administration of SRIC's property rights.

Attorney contract No. 42193, as amended, has been in effect since January 19, 1949, and its term currently extends to September 12, 1989. During this period, it expired by its terms on September 12, 1959, and subsequently was reinstated, with a change in parties, in April 1962. It also expired by its terms on September 12, 1969, and was subsequently reinstated in July 1970; it again expired by its terms on September 12, 1979, and was reinstated, with a change in parties, in April 1980.

James E. Curry was the chief attorney under the attorney contract from January 19, 1949, to September 12, 1959; and he was recorded as attorney of record in docket No. 291 from August 10, 1951, to July 18, 1962, the date on which BIA approved the reinstated contract. Under the original contract, Charles MacPhee Wright was the associate attorney, subject to Mr. Curry's general or specific instructions.

James E. Curry was located in Washington, D.C.; he was a recognized authority in the development and presentation of Indian claims; and he and his law firm were esteemed in this type of practice. C.M. Wright was located in Tucson, Arizona. He and his law firm maintained a general practice that included Indian matters, claim and non-claim, that involved tribes in Arizona and in adjoining states.

C.M. Wright had investigated and developed facts relative to SRIC's claims. With participation by J.E. Curry, C.M. Wright undertook to prepare a petition on those claims. The petition filed in docket No. 291 was prepared, printed and signed in Tucson by C.M. Wright and forwarded to Washington for J.E. Curry to sign and file. J.E. Curry signed the petition, added a verification and filed the petition on August 10, 1951. The petition and verification are the only pleading, motion or other paper in docket No. 291, signed by Mr. Curry. Mr. Curry suffered a paralyzing attack of Guion Barre disease in 1955, and as a result of this illness, he became inactive in the practice of law. He performed no legal services in docket No. 291 after 1955. Mr. Curry died August 23, 1972.

On July 18, 1962, BIA approved the reinstatement of attorney contract No. 42193, which had expired on September 13, 1959, for a term of 10 years from the termination date of the original contract. Terms and conditions were to remain the same, except: James E. Curry was "eliminated as a party to this reinstated contract"; C.M. Wright was designated as chief attorney; Samuel P. Goddard, Jr., of Tucson, Arizona, was "added as an associate and the only associate-attorney"; the new attorneys under contract No. 42193 were to "pay to James E. Curry whatever compensation may be owing to him for any and all services rendered by him under the original contract," and were to indemnify the Tribe against "any and all liability to James E. Curry under the original contract".

The second reinstatement of contract No. 42193, approved by the BIA on July 28, 1970, noted that it had expired on September 13, 1969, continued C.M. Wright as chief attorney and Samuel P. Goddard, Jr. as the associate-attorney, and extended its term for 10 years from the termination of

the first extension. C.M. Wright was recorded as the attorney of record by the Commission on docket No. 291 from July 18, 1962, to November 18, 1971.

After the GSA accounting report was filed in 1971, C.M. Wright requested Z. Simpson Cox to represent the SRIC on the accounting claim in docket No. 291. Z. Simpson Cox, a senior partner in the law firm of Cox & Cox, was located in Phoenix, Arizona, and had practiced there since admission to the Arizona Bar in 1938. He had been general counsel to the Gila River Pima-Maricopa Indian Community (GRIC); since 1951 he had represented that community and the American Indians Residing on the Ak-Chin Indian Reservation in claims before the Commission in dockets Nos. 235 and 236.

In July 1971, contract No. 42193 was amended to authorize C.M. Wright and Samuel P. Goddard, Jr. to employ Z. Simpson Cox as chief attorney for the accounting claim in docket No. 291. The SRIC and the claims attorneys agreed to, and, by the amendment, did employ Z. Simpson Cox in that capacity. The BIA approved the amendment on August 5, 1971. The amendment, as to Cox's employment, stated:

> The Claims Attorneys propose to employ and *hereby do employ,* (a) as such an assisting attorney Z. Simpson Cox, Esquire, a lawyer in Phoenix whom they hereby designate as *Chief Attorney in all matters affecting the Tribe-Client's accounting claim* designated as the second cause of action in Docket 291 pending before the Indian Claims Commission; and (b) such other attorneys whom may be partners or associates in the law firm of Cox and Cox in which Z. Simpson Cox is a senior partner, as the latter may at any time and from time to time designate as such an assisting attorney or assisting attorneys. [Emphasis supplied.]

The amendment provided that Cox, as an assisting attorney, did not become an "associate-attorney" and that his compensation was payable only by the claims attorneys (Wright and Goddard), who agreed to indemnify the SRIC against any liability to the assisting attorneys for legal services.

On November 4, 1971, C.M. Wright filed a motion to formalize the employment of Cox as chief attorney and to recognize that status "retroactively to the date of such amendment which was 15 July 1971." On November 18, 1971, the Commission by order substituted Cox as the attorney of record in place of C.M. Wright, effective as of July 15, 1971.

With respect to cause of action No. 2, all proceedings in the Commission, after the filing of the petition on August 10, 1951, with the exception of Wright's November 4, 1971, motion, until July 18, 1977, were made by Z. Simpson Cox as chief attorney and attorney of record. After July 15, 1971, C.M. Wright and Samuel P. Goddard, Jr. continued in the status of associate-attorneys; the work of investigation and preparation of the accounting claim, however, was the responsibility of Cox. C.M. Wright died on May 8, 1975.

On July 21, 1976, the SRIC council approved a contract, dated as of January 1, 1976, which was to be a substitute for contract No. 42193. The new contract employed Z. Simpson Cox, L.J. Cox, Jr., Alfred S. Cox and Samuel P. Goddard, Jr. as SRIC's claims attorneys, with Z. Simpson Cox designated as chief claims attorney. The new contract purported to continue the work on the accounting claim in docket No. 291 that had been undertaken under contract No. 42193, as well as the work in docket No. 228 on the land claims that had been done by Cox and by the Washington law firm of Wilkinson, Cragun & Barker. The land claims of the SRIC, the GRIC and the Ak-Chin Indian Community had been consolidated in docket No. 228. Wilkinson, Cragun & Barker had been employed since 1965 by C.M. Wright and Samuel P. Goddard, Jr. pursuant to a 1965 amendment to contract No. 42193. The term of the new contract was to be for a period of 10 years or until final payment of claims in docket No. 228.

The new contract provided that, in addition to attorneys fees, the SRIC would pay all costs, expenses and fees in connection with the contract, including but not limited to fees and expenses of witnesses, researchers, investigators, printing, xerography, clerical assistance, long-distance telephone, telegraph and travel. Approved costs, fees and expenses were to be paid within a reasonable time after being incurred; any not paid were to be paid from any monies recovered or received on claims in docket No. 228. An interim allocation for such expenses was established, with 22% paid by SRIC, 76% paid by GRIC and 2% paid by Ak-Chin Indian Community.

On August 12, 1976, the BIA disapproved the new contract because the term of contract No. 42193 was effective through September 11, 1979, and under paragraph 13, contract No. 42193 did not terminate by reason of the death of C.M. Wright. After the BIA disapproved the new contract, Z. Simpson Cox continued to represent the SRIC in docket No. 291 as the chief attorney and attorney of record under the amendment to contract No. 42193 which had been approved by the BIA on August 5, 1971.

On January 14, 1977, all claims of the estate of C.M. Wright for compensation for work under contract No. 42193 in docket No. 291 were assigned to Samuel P. Goddard, Jr. In the agreement, the estate was reimbursed in the amount of $8,000, for costs advanced by C.M. Wright in his lifetime in preparation of the claims in dockets Nos. 291 and 228.

The SRIC council, on July 13, 1977, adopted a resolution to rescind the new contract dated as of January 1, 1976, and to amend contract No. 42193 so as to liquidate the SRIC's obligation for all legal services theretofore performed in docket No. 291. The parties to the amendment, signed by the SRIC on July 18, 1977, were Samuel P. Goddard, Jr., Z. Simpson Cox, L.J. Cox, Jr., and Alfred S. Cox. (Cox & Cox). The amendment recognized that James E. Curry and C.M. Wright were deceased, that only Samuel P. Goddard, Jr. was a party to a contract approved by the BIA, and that Cox, although not previously a party to the SRIC's approved attorney contract, in fact had performed services in docket No. 291 as chief attorney and as attorney of record in the Commission and in the United States Court of Claims.

The July 18, 1977, amendment to contract No. 42193 cancelled all responsibility of Goddard and Cox with respect to the accounting claims in docket No. 291 and continued that contract in force with respect to docket No. 228, and, as to costs and expenses, in docket No. 291. The amendment provided that Cox would be paid 2.5% of any recovery by settlement or judgment on the accounting claim for all legal services performed to date, and that Samuel P. Goddard, Jr., would hold the SRIC harmless from any claim for legal services heretofore performed in docket No. 291.

The BIA, in its approval on August 2, 1977, stated that contract No. 42193 between the SRIC and C.M. Wright and Samuel P. Goddard, Jr., is hereby amended "to delete the name of C.M. Wright" and to add the following paragraphs:

(1) All responsibilities of Samuel P. Goddard, Jr., and Cox and Cox with respect to the claims of the Community asserted in Docket No. 291 are cancelled and the attorneys' contract bearing the Symbol I–1–Ind–42193 is modified accordingly. The contract continues in force with respect to Docket No. 228 and as to costs and expenses in Docket No. 291.

(2) From any recovery in Docket No. 291 realized by settlement or judgment the sum of two and one-half (2.5) percent of the recovery shall be paid to Cox and Cox in discharge of all claims for all legal services performed in this claims case to this date by Cox and Cox.

(3) Samuel P. Goddard, Jr., shall and hereby agrees to hold the Community harmless from any claim for legal services heretofore performed in Docket No. 291 under the said con-

tract I–1–Ind–42193 by any attorneys other than Cox and Cox, whose claim is satisfied in paragraph 2, above.

After contract No. 42193 had expired on September 12, 1979, it was reinstated by an amendment signed by the SRIC on April 2, 1980, and approved by the BIA on May 12, 1980. This amendment, captioned Reinstated Attorneys Claims Contract with Amendments, names as contract parties the SRIC and attorneys Samuel P. Goddard, Jr. and Samuel Goddard III, of Phoenix, Arizona. Reinstated contract No. 42193 applies to proceedings in docket No. 228, and the attorneys have no responsibility or claim to compensation as to docket No. 291. The interim allocation of a 22% share of the expenses in docket No. 228 to SRIC was continued. The attorneys agreed to be responsible for any claim to compensation to be paid to the estate of C.M. Wright under contract No. 42193.

### DISPOSITION

This court's jurisdiction over disposition of the 2.5% of the judgment allocated for attorneys fees is derived from section 15 of the Indian Claims Commission Act (25 U.S.C. § 70n (1976)). Section 15 provided that the fees for attorneys for all services rendered in prosecuting a claim under the Act, whether before the Commission or otherwise, unless the amount is stipulated in the approved contract between the attorney and the Indian claimant, would be fixed by the Commission in such amount as it finds to be adequate compensation for the services rendered and the results obtained. Fees fixed by the Commission, exclusive of reimbursements for actual expenses, may not exceed 10% of the amount recovered in any case. This authority was transferred to the Court of Claims in 1976 (25 U.S.C. § 70v (1976)), and to the Claims Court in 1982. 25 U.S.C. § 70v–3(a) (Supp. V 1981); Pub.L. No. 97–164, § 149(a), 96 Stat. 46.

Compensation for attorney services and apportionment of fees among competing attorneys in Indian Claims cases are matters that have been considered and resolved by the Court of Claims. The standards enunciated in the following cases control disposition of the fee in dispute here: *Western Shoshone Identifiable Group v. United States,* 652 F.2d 41, 228 Ct.Cl. 26 (1981); *Sisseton & Wahpeton Bands v. United States,* 423 F.2d 1386, 191 Ct.Cl. 459 (1970); *Cherokee Nation v. United States,* 355 F.2d 945, 174 Ct.Cl. 131 (1966).

■ The SRIC, under section 15 of the Act, was authorized to retain attorneys "of its own selection" to represent its interests. Under the Act, the practice of all attorneys selected by the Indians before the Commission "shall be regulated by its adopted procedure." The procedures rule (25 C.F.R. § 503.34 (1979)) of the Indian Claims Commission includes the following:

> Claims may be filed on behalf of a claimant by an attorney or firm of attorneys retained for that purpose under the provisions of section 15 of the act creating the Commission. Where a claimant has retained more than one attorney or more than one firm of attorneys, only one of said attorneys shall be designated individually as the attorney of record. All pleadings, notices or other papers required by these rules or by orders of the Commission to be served upon a claimant, shall be sent to such attorney of record at the address designated by him, and service upon him shall be deemed to be service upon the claimant.

In this procedure, designation of an individual to be the attorney of record was a requirement imposed in the interest of orderly administration. It is an aid in fixing responsibility for compliance with Commission rules of practice. It does not necessarily determine entitlement to participate in an allocation of fees for attorney services.

■ To qualify for a fee under the Act, an attorney must have performed services for the Indians under an approved contract. Government approval of all contracts with Indian tribes and Indians is an ancient requirement for enforceability. R.S. § 2103; 25 U.S.C. § 81 (1982).

The Court of Claims in the *Sisseton & Wahpeton* case established that not all claims of attorneys for services, even under an approved contract, were cognizable by the Commission. Conflicting claims of lawyers associated together under the same contract as to their relative participation present a private dispute. It is a controversy that is not a claim against the Government. Such wholly private controversies for the division of fees or assignment of rights are to be decided by other tribunals and are not within the jurisdiction conferred on the Commission. 423 F.2d at 1391. The rule is otherwise when several attorneys have at different times appeared for claimant Indians, generally under separate contracts. The dispute then is more than a private contractual matter. In such a factual context, the Commission and the court must resolve the conflicting claims for the services that had been provided in the successful effort to recover from the Government. 423 F.2d at 1391.

The agreements that the BIA designated by its symbol, contract No. 42193, were a succession of different contracts. They were generated by changes that brought different parties into the contractual arrangements and which were reflected in the Commission's administrative records and in the terms of its approvals.

In the 1971 amendment to contract No. 42193, SRIC agreed that Cox would be the chief attorney responsible for the accounting claim and attorney of record in docket No. 291. He performed in that capacity pursuant to the contract and the approval of the BIA. In the 1977 amendment, he became a party to contract No. 42193. The amendment agreed that Cox would be paid 2.5% of any recovery in docket No. 291 for his services on the accounting claim. The BIA specifically approved this allocation made by the parties. Clearly, the 1977 amendment intended that any other claims for legal services rendered in docket No. 291 before July 18, 1977, were to be covered by the indemnity provision of the contract.

The 1962 reinstatement of contract No. 42193 provided that the contract attorneys would pay James E. Curry whatever compensation that may be owing for services under the original contract, and that they would indemnify the SRIC against any such liability. In the 1977 amendment, Samuel P. Goddard, Jr. agreed to hold the SRIC harmless from any claim for legal services performed under the contract by any attorneys other than Cox. These provisions are of the type of private arrangements that, under the rule of *Sisseton & Wahpeton*, are enforceable before tribunals other than the Commission.

## CONCLUSION

On the basis of the foregoing findings of fact, the agreement of the parties, and the approval of the BIA, Cox is entitled to the 2.5% of the judgment for legal services in docket No. 291. The claim of the Curry Estate as intervenor is denied. Z. Simpson Cox is awarded $325,000 for attorneys fees. The fee to be paid is 2.5% of the judgment for plaintiffs ordered by the United States Court of Claims on July 2, 1982, in docket No. 291.